IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALFONSO PERCY PEW | : | CIVIL ACTION |
| | : | |
| v. | : | No. 22-1488 |
| | : | |
| GEORGE LITTLE, et al. | : | |

**MEMORANDUM**

**Judge Juan R. Sánchez**                                                                               **August 27, 2025**

       Pro se Plaintiff Alfonso Percy Pew brings a § 1983 equal protection claim against Defendant Mandy Biser Sipple for allegedly denying his request for an electric razor during his incarceration at State Correctional Institution (SCI) at Phoenix. Biser Sipple now moves for summary judgment on various grounds, including that Pew failed to properly exhaust his equal protection claim and because no reasonable jury could find she violated Pew's right to equal protection. Because no genuine dispute of material fact exists as to either of these two grounds, and because Biser Sipple is entitled to judgment as a matter of law, summary judgment will be entered in her favor.

**BACKGROUND**

       Plaintiff Alfonso Percy Pew is an incarcerated individual at SCI Phoenix, where he has been since September 2021. Third. Am. Compl. at 7, ECF No. 111-2 at 1.[1] Prior to his transfer to SCI Phoenix, Pew was incarcerated at SCI Rockview. *See* ECF No. 119 at 43. Shortly after his arrival at SCI Phoenix, on October 5, 2021, Pew submitted a Form DC-135A to Defendant Mandy Biser Sipple, the Deputy Superintendent of Centralized Services, informing her he had been "given weekly barber electric razor shaves due to medical reasons" at SCI Rockview and was requesting

---

[1]      Page number references are to the CM/ECF pagination in the header of each document filed via the Court's electronic case filing system, which may vary from pagination elsewhere.

1

the same at SCI Phoenix. *Id.* Biser Sipple responded to Pew on October 14, 2021, informing him that he needed a recommendation from the local doctor through a sick call, after which he would be scheduled for care at the SCI Phoenix barbershop if his need was warranted. *Id.*

On November 1, 2021, Pew submitted another Form DC-135A highlighting his medical need for an electric razor. *Id.* at 44. Pew informed Biser Sipple that he had followed through with a sick call to address this need and was told the paperwork would be sent to Biser Sipple for review. *Id.* The next day, Biser Sipple told Pew she had "reviewed all [Pew's] sick calls" and found no record of a razor review, and that Pew would need a new order from SCI Phoenix, independent of whatever arrangement he had at SCI Rockview. *Id.*

On January 17, 2022, Pew filed an official grievance at SCI Phoenix, Grievance No. 964261, raising Biser Sipple's refusal to follow the agreement at SCI Rockview that allowed him an electric razor. *Id.* at 61. Pew explained he had "never received weekly passes at Phoenix for electric razor shaves" and that Biser Sipple was "deliberately indifferent based on retaliation for [Pew's] jailhouse lawyering and grievances." *Id.* On February 8, 2022, Pew's grievance was denied for failure to follow the proper procedures, informing him that "any inmate that requests a weekly shave or and electric razor must be evaluated by a medical doctor at SCI PHX for such order." ECF No. 111-10 at 6. Pew was directed to submit a request or sick call slip to be evaluated. *Id.* Pew appealed the grievance denial. ECF No. 111-9 at 3.

While the appeal was pending, on March 29, 2022, Pew visited Dr. Saeed Bazel for an electric razor evaluation, during which Dr. Bazel noted that Pew had "a few asymptomatic bumps under the mandible." ECF No. 119 at 47. Dr. Bazel noted he would "discuss with medical team and provide the item if approved." *Id.* On May 4, 2022, Dr. Bazel submitted an addendum to his progress note, noting that Pew's electric razor request "did not appear justified by me or our

2

medical team." *Id.* at 50. Pew claims Biser Sipple was involved in this denial because "[t]here is no other Medical Team for [Dr. Bazel] to see but the person over him," which he claims is Biser Sipple, by virtue of her position as Deputy of Centralized Services." *Id.* at 7-8. Furthermore, Pew claims Dr. Bazel told Pew he denied his request because he was ordered by his superiors, impliedly Biser Sipple, to see inmates but "not to order an electric razor nor approval for weekly barber medical shave." *Id.* at 48-49.

In June 2022, Pew's appeal of his grievance denial was also denied, leading to another appeal and a final decision to uphold the denial on August 2, 2022. ECF No. 111-10 at 1. In the final decision, the Chief Grievance Officer noted that staff reviewed Pew's concern of not being provided proper medical care and found that the care Pew received was reasonable and appropriate. *Id.* Pew was informed that his attending practitioner is tasked with deciding whether to issue an electric razor and any conditions should be discussed with the practitioner. *Id.*

On June 7, 2023, the Pennsylvania Department of Corrections issued a memo outlining a new procedure for inmates at SCI Phoenix to receive electric razor use as a reasonable accommodation. ECF No. 119 at 64. The procedure required those seeking electric razor shaves as a reasonable accommodation to submit a request to Corrections Healthcare Administrator Britney Huner, who would process the requests. *Id.*

On August 3, 2023, Pew was evaluated again for an electric razor, this time by Dr. Carol Annino. *Id.* at 53. In the progress note, Dr. Annino noted Pew's history of pseudofolliculitis barbae, but remarked that because his skin that day was "essentially within normal" she could not "base any recommendations for an electric razor." *Id.* at 54. Pew was advised to return immediately if he showed any signs of folliculitis. *Id.*

While these events were ongoing, Pew filed this action in April 2022 alleging multiple constitutional violations at SCI Phoenix, including the denial of his request for an electric razor. ECF No. 2. Following a motion to dismiss, the only remaining claim in Pew's Third Amended Complaint—the operative complaint—is Pew's § 1983 equal protection claim against Biser Sipple for denying Pew's request for an electric razor. Biser Sipple now moves for summary judgment.

**LEGAL STANDARD**

A court will grant summary judgment if a moving party can establish (1) "there is no genuine dispute as to any material fact" and (2) "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 292 (3d Cir. 2012). The moving party bears the initial burden of identifying the parts of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to show—by citing to specific facts in the record—that there is a genuine issue of material fact requiring the case to proceed to trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A fact is "material" if it could affect the outcome of the suit—as determined based on the relevant substantive law—and a dispute is "genuine" if a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248. In reviewing a motion for summary judgment, a court must draw all inferences in favor of the nonmoving party. *Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 345 (3d Cir. 2022).

Where a plaintiff is pro se, a court is to construe the allegations liberally, applying the "relevant legal principle even when the complaint has failed to name it." *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). While this standard affords pro se litigants some flexibility—especially if they are incarcerated—a pro se litigant is "not relieved of [their] obligation under Rule 56 to point to

4

competent evidence in the record that is capable of refuting a defendant's motion for summary judgment." *Edwards v. Rice-Smith*, 606 F. Supp. 3d 151, 154 (E.D. Pa. 2022) (internal citation omitted); *Watson v. Phila. Hous. Auth.*, 629 F. Supp. 2d 481, 485 (E.D. Pa. 2009) ("The party opposing summary judgment, whether pro se or counseled, must present evidence, through affidavits, depositions, or admissions on file, to show that there is a genuine issue for trial.").

**DISCUSSION**

Defendant Biser Sipple moves for summary judgment as to Pew's equal protection claim against her on four separate grounds: (1) failure to exhaust, (2) insufficient evidence from which a reasonable fact finder could conclude she violated Pew's right to equal protection, (3) lack of personal involvement, and (4) Eleventh Amendment immunity.[2] The Court addresses each basis.

First, Biser Sipple moves for summary judgment by arguing Pew failed to exhaust his administrative remedies as required under the Prison Legal Reform Act because he did not specifically state his equal protection claim in his grievance. Pew argues he did properly exhaust his claim and that Biser Sipple is "cherry picking over technical wording as if EVERYTHING IN LAW CAN BE WRITTEN IN [THE GRIEVANCE FORM]." ECF No. 119 at 15. Pew asserts his grievance placed Biser Sipple on notice of his claims, "if not every single penalty," and that his grievance pertaining to retaliation was sufficient to infer an equal protection claim. *Id.* at 16.

The Prison Litigation Reform Act requires all prisoners to exhaust the administrative remedies available to them before bringing suit. 42 U.S.C. § 1997e(a) ("No action shall be brought

---

[2] Defendant Biser Sipple argues to the extent she is sued in her official capacity, the claim against her should be dismissed "because the Eleventh Amendment further prohibits suit against state officials in their official capacities." ECF No. 111-11 at 7. In his response, Pew clarifies that he is suing Biser Sipple in her individual capacity. ECF No. 119 at 17-18. Because there is no basis for Eleventh Amendment immunity, the Court will deny Biser Sipple's motion for summary judgment on those grounds.

with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules, rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (internal citation and quotation marks omitted). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*; *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004) ("prison grievance procedures supply the yardstick for measuring procedural default").

Here, the relevant grievance policy is the Department of Corrections grievance policy, DC-ADM 804.[3] The DC-ADM 804 sets forth a three-step grievance process through which incarcerated individuals may raise issues pertaining to their incarceration: (1) file an initial grievance, (2) if denied, appeal to the Facility Manager, and (3) if denied again, appeal to the Secretary's Office of Inmate Grievances (SOIGA). DC-ADM 804. The DC-ADM 804 also provides that the incarcerated individual "shall specifically state any claims they wish to make concerning violations of Department directives, regulations, court orders, or other law." *Id.* In this context, the Third Circuit has held that exhaustion "requires inmates to provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures." *Vo v. Wetzel*, No. 22-1210, 2022 WL 1467978, at *2 (3d Cir. May 10, 2022)

---

[3]     *See* DC-ADM 804 Policy Statement, available online at: https://www.pa.gov/content/dam/copapwp-pagov/en/cor/documents/about-us/doc-policies/804%20Inmate%20Grievances.pdf (effective May 1, 2015) (last visited August 19, 2025).

(quoting *Mack v. Warden Loretto FCI*, 839 F.3d 286, 296 (3d Cir. 2016)); *see Jackson v. O'Brien*, No. 18-00032, 2021 WL 5087922, at *5 (W.D. Pa. Nov. 2, 2021) ("[A]n inmate's grievance must include facts sufficient to place prison officials on fair notice of the claim or claims to be investigated.").

While Pew's grievance alerted prison officials to his primary concern—that he had been denied an electric razor—Pew's grievance makes no reference to discrimination vis-à-vis other inmates. Pew does not describe the treatment of other incarcerated individuals, such as, importantly, whether they were receiving electric razors. The core of Pew's grievance is describing SCI Phoenix's failure to provide Pew with weekly electric shaves and the departure that presented from his treatment at SCI. Rockview. ECF No. 118-8 at 6, 8. Pew argues he exhausted his claim because he grieved Biser Sipple's denial of his request as retaliation for his jailhouse lawyering and grievances, and that the reference to retaliation was sufficient to put prison officials on notice of an equal protection claim. *Id.* at 8. The Court is unpersuaded that this was sufficient. *See, e.g.*, *Vo*, 2022 WL 1467978, at *2 (affirming lower court's finding that plaintiff had failed to exhaust her equal protection claim because the facts in her grievance "did not alert them to any issue of disparate treatment"); *Quarles v. Bontempo*, No. 23-01601, 2024 WL 517871, at *5 (E.D. Pa. Feb. 9, 2024) (holding plaintiff's equal protection claim was not exhausted because his grievance "does not allege or give any suggestion that he was denied equal protection" and because "there is no indication that the prison recognized or investigated any such claim"); *Lane v. Tavares*, No. 14-00991, 2019 WL 1620285, at *7 (M.D. Pa. Apr. 16, 2019) (failure to exhaust where the grievance did not mention discrimination on the basis of race, even though discrimination on the basis of disability was alleged); *McKeithan v. Kerestes*, No. 11-1441 2014 WL 3734569, *9 (M.D. Pa. July

7

28, 2014) (failure to exhaust where plaintiff "never filed a single grievance alleging that . . . he had been denied the same privileges as other prisoners").

Even assuming Pew's grievance was sufficient to exhaust his administrative remedies, his equal protection claim fails on the merits. Under the Equal Protection Clause of the Fourteenth Amendment, "all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). Traditionally, plaintiffs must "prove that they were members of a protected class" to establish a prima facie case of discrimination under the Equal Protection Clause. *Oliveira v. Twp. of Irvington*, 41 F. App'x 555, 559 (3d Cir. 2002) (citing *Keenan v. City of Philadelphia*, 983 F.2d 459, 465 (3d Cir. 1992)). However, where an individual is not a member of a protected class, they may raise an equal protection claim under a "class of one" theory, which requires a plaintiff to allege "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006). Because prisoners are not members of a protected class, *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2001), Pew must proceed on a "class of one theory."

Biser Sipple moves for summary judgment on Pew's equal protection claim because Pew "has not and cannot offer proof that any *similarly situated* inmates were treated differently from Pew." ECF No. 111-11 at 9. The Court agrees. In his opposition, the only piece of evidence submitted by Pew in support of his equal protection claim is the June 7, 2023 memo addressed to another SCI Phoenix inmate, Peter Hogan, which briefly outlines a new procedure for SCI Phoenix inmates approved for electric razor use. ECF No. 119 at 64. In relying on the memo, Pew seeks to imply that at least one other SCI Phoenix inmate—Hogan—was receiving electric razor shaves. In

his brief, Pew argues, "Peter Hogan and Plaintiff are same race, same city, serving same time, lock on same unit" and that while Hogan was permitted to own a personal electric razor, Pew was not. *Id.* at 19. While the memo, along with Pew's allegations, were sufficient to survive the motion to dismiss, they do not raise a genuine issue of material facts such that the case must proceed to trial. The June 7, 2023 memo may permit an inference that Hogan was receiving an electric razor— albeit a tenuous one— but falls short of providing any additional evidence to support Pew's equal protection claim. The memo provides no evidence that Hogan was similarly situated, that the treatment of Pew was intentional, or that there was no rational basis for the difference in treatment. Moreover, Pew's own statements—provided in his opposition brief with no supporting evidence— are the kind of "conclusory, self-serving" statements that are insufficient to withstand summary judgment. *See Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009). Based on the record as is, a reasonable jury could not find for Pew on his equal protection claim. Accordingly, summary judgment will be entered in favor of Biser Sipple.[4]

**CONCLUSION**

Defendant Biser Sipple moves for summary judgment on Pew's remaining equal protection claim. Because there is no genuine dispute of material fact as to Pew's failure to exhaust his claim and the merits of the claim, and because Biser Sipple is entitled to judgment as a matter of law on both grounds, summary judgment will be entered in her favor.[5]

---

[4] Because summary judgment is granted in favor of Biser Sipple for Pew's failure to exhaust his claim and on the merits, the Court need not address Biser Sipple's remaining basis for summary judgment, in which she argues Pew has failed to establish personal involvement.

[5] In the conclusion paragraph of his response brief, Pew references a "cross summary judgment argument." ECF No. 119 at 21. While fashioned as a cross motion for summary judgment, it is unclear upon which specific bases Pew moves for summary judgment. Moreover, Pew does not cite to any parts of the record that would support his motion. To the extent Pew moves for summary judgment, the Court will deny that motion.

An appropriate order follows.

BY THE COURT:


  /s/ Juan R. Sánchez
Juan R. Sánchez, J.